UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DELISA HALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:11-cv-277-WTL-DKL |
| SCOTT T. GANNON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON PLAINTIFF'S MOTION IN LIMINE
AND *DAUBERT* CHALLENGE TO EXPERT EVIDENCE**

Before the Court is the Plaintiff's Motion in Limine regarding the Testimony of Dr. Gregory Hale (dkt. #45). The Court, being duly advised, now rules as follows.

### I.    STANDARD

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established the standard for determining the admissibility of scientific evidence and the Federal Rules of Evidence were thereafter amended to reflect the law as set forth in *Daubert*. Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In other words, the testimony must be relevant and reliable. *United States v. Allen*, 390 F.3d 944, 949 (7th Cir. 2004). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

In determining whether expert testimony is both relevant and reliable, courts employ a three-step analysis. *E.g.*, *Ervin v. Johnson & Johnson*, 492 F.3d 901, 904 (7th Cir. 2007). First, the witness must be qualified "as an expert by knowledge, skill, experience, training, or education." *Id.* Second, "the expert's reasoning and methodology underlying the testimony must be scientifically reliable." *Id.* Third, "the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

Several factors shed light on the reliability of an expert's reasoning and methodology: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known and potential rate for error; and (4) the "general acceptance" of the theory. *Bradley v. Brown*, 42 F.3d 434, 437 (7th Cir. 1994) (citing *Daubert*, 509 U.S. at 592-94). This is not a rigid test, however, as the applicability of these factors depends on the particular facts and circumstances of each case. *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000).

The *Daubert* "framework for assessing expert testimony is applicable to social science experts, just as it applies to experts in the hard sciences." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). "The measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary," but *Daubert* nevertheless applies. *Id.*

## II. BACKGROUND

This action concerns an automobile accident that occurred on January 19, 2009, when the truck Plaintiff Delisa Hale was driving was struck by a truck driven by the Defendant Scott T. Gannon. The Plaintiff is alleged to have sustained permanent and severe injuries, including severe head injury, multiple orthopedic injuries, and brain injuries.

The Defendants stipulate that the accident was caused by the negligence of Defendant

Scott T. Gannon while acting in the course and scope of his employment with Defendant Annett Holdings, Inc., d/b/a TMC Transportation, Inc. The Defendants also stipulate that the Plaintiff was injured and incurred medical treatment as a result of the accident. However, the Defendants dispute the nature and extent of those injuries.

One of the Defendant's proffered experts regarding the Plaintiff's damages is Dr. Gregory Hale, a licensed psychologist. The Plaintiff filed a motion in limine to exclude the testimony of Dr. Hale. A hearing on the matter was held on August 29, 2012, during which time Dr. Hale testified regarding his qualifications and his analysis of the Plaintiff's records.

### III.   DISCUSSION

#### A. Qualifications

Dr. Hale explained that all psychologists licensed in Indiana complete a one-year residency following academic coursework. In addition, Indiana does not recognize specialty certifications. Any designation of specialization, according to Dr. Hale, is a self-designation based on one's individual experience and simply reflects the sub-field to which the designating psychologist devotes his time.

Dr. Hale testified that he has been a licensed psychologist in Indiana since November 1989. He has a Ph.D. in counseling psychology from Ball State University. In addition, Dr. Hale completed an additional year of supervision underneath a licensed health service provider in psychology and he has received the endorsement from the licensing board to practice independently. Dr. Hale's primary practice is in the field of medical psychology, with 40% of his practice comprised of forensic psychology, which he explained applies the science of psychology to questions of the law. Dr. Hale's education, training, and experience qualify him as an expert in psychology.

The Plaintiff urges this Court to clarify the parameters of Dr. Hale's expertise, arguing that Dr. Hale may be a psychologist, but he is not a *neuro*psychologist, and therefore is not qualified to opine about neuropsychological injuries, such as the mild traumatic brain injury the Plaintiff is alleged to have suffered. In response, the Defendants point out that Indiana does not require a separate certification to designate oneself as a neuropsychologist and there is no Indiana board certification for neuropsychology, although independent organizations do offer board certifications in the specialty. In addition, Defendants offer the testimony of Dr. Hale that all psychologists have the same core training in neuroanatomy, psychophysiology, administration, interpretation of tests, and abnormal psychology. As a licensed psychologist, Dr. Hale is certified to administer, review, and interpret the results of tests, including the tests conducted on the Plaintiff. Dr. Hale also testified that he is familiar with neuropsychological tests and that "most psychologists" would be able to analyze the results of those tests. Dr. Hale routinely administers some of the tests used to diagnose the Plaintiff (the MCMI-III) and routinely evaluates the results of other tests used (the PASAT), although he does not administer them himself. This is sufficient to qualify Dr. Hale to opine on the Plaintiff's alleged neuropsychological injuries.[1]

## B. Methodology

Dr. Hale explained that, in approaching a patient from a forensic psychology perspective, one is always looking for alternative hypotheses and seeking out additional contributing factors. The doctor also explained that when he performs a record review that includes testing data, he evaluates the raw data, not scaled scores. During the course of his testimony, Dr. Hale explained

---

[1] During the hearing, Dr. Hale also testified that neither of the Plaintiff's neuropsychologists – Dr. Lance Trexler and Dr. Robert Jeffries – are board-certified in neuropsychology. If this is true, then by Plaintiff's own logic, Drs. Trexler and Jeffries are not qualified to testify to the neuropsychological injuries suffered by the Plaintiff either.

that most psychologists do not administer their own tests; rather, a technician physically administers the tests, while the psychologist interprets the results. In this respect, when Dr. Hale reviews the raw data, he conducts an analysis of the data that is the same as the initial reviewing physician conducted. With respect to the underlying analysis of that data, Dr. Hale testified that there are standards and controls within the psychological field that guide the interpretation of these test results. Furthermore, he said that the administered tests have themselves been subjected to testing, peer-review, and rate of error analyses. For these reasons, the Court finds that the methodology employed by Dr. Hale to review the medical records of the Plaintiff is scientifically reliable.

The Plaintiff urges that a records review alone is not a scientifically reliable measure of one's injuries; rather, it must at least be accompanied by an interview, if not an independent medical examination. In support, the Plaintiff directs the Court's attention to *Minisan v. Danek Medical, Inc.*, 79 F.Supp.2d 970 (N.D. Ind. 1999), wherein that court found that the plaintiff's proposed expert would not be permitted to testify because "he arrived at his conclusions based solely on an examination of [the plaintiff's] numerous medical records." 79 F.Supp.2d at 976. *Minisan* involves a products liability action; the opinion offered by the expert was that the product at issue caused the plaintiff's injuries. In reaching this conclusion, the court noted that the expert never examined the plaintiff, never met with her, or even spoke with her, and did not examine or test the product at issue. The expert never explained how he reached his conclusions or pointed to some objective source to show that he followed the scientific method. In contrast, here Dr. Hale reviewed the same test data used by original treating physician, grounded his conclusions in the objective test data, and relied on scientifically viable tests. Given this level of analysis and explanation, the Court finds nothing improper about testimony based on a review of the relevant

5

medical documentation.

### C. Relevance

With respect to the third prong, the Defendants must demonstrate that the proffered testimony will assist the trier of fact. In this case, liability is generally accepted, and damages are the key issue. Dr. Hale's testimony sheds light on what injuries the Plaintiff sustained, as well as their relationship to the accident, and it therefore aides the trier of fact in determining damages. As a result, the Court finds that Dr. Hale's testimony surpasses the relevance threshold.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion in limine regarding the testimony of Dr. Gregory Hale is **DENIED.**

The Court notes that this entry is not a final ruling regarding the admissibility of the evidence at issue. Rather, it simply prohibits any party from eliciting testimony regarding or otherwise mentioning a particular issue during trial without first seeking leave of Court outside of the presence of the jury. Therefore, a party who wishes to elicit testimony or introduce evidence regarding a topic covered by this entry should request a sidebar conference during the appropriate point in the trial, at which time the Court will determine how best to proceed. Parties should always err on the side of caution and interpret this ruling broadly, requesting sidebars before eliciting testimony or offering evidence that is even arguably covered by this ruling and avoiding mention of such topics during voir dire, opening statements, and closing argument.

SO ORDERED:   09/05/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.